## ROBINSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8710.

Circuit Court of Appeals, Ninth Circuit.

June 23, 1938,

George Bouchard and Dana Latham, both of Los Angeles, Cal., for petitioner.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch, Warren F. Wattles, and Lester Gibson, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Respondent, the Commissioner of Internal Revenue, determined that in 1927 petitioner, H. T. Robinson, had acquired, at a total cost of $35,751.93, bonds of Ocean Park Heights Water Company, Incorporated, of the face value of $100,000 and 1,250 shares of that company's capital stock; that, later in 1927, petitioner had

sold part of the bonds ($80,000 face value) for $73,467.36, realizing therefrom a net gain of $37,715.43; that in 1928 petitioner had sold the stock for $120,470.04, all of which was net gain; that petitioner had not reported these gains as income nor paid any tax thereon; and that, consequently, there were, in respect of petitioner's income tax for 1927 and 1928, deficiencies of $4,883.80 and $7,275.21, respectively.[1]

Petitioner petitioned the Board of Tax Appeals for a redetermination of the claimed deficiencies. The sole question raised by his petition was whether, for the purpose of determining his gain or loss, the proper cost basis of the bonds and stock was $35,751.93, as claimed by respondent, or whether, as claimed by petitioner, the proper cost basis was $206,191.86. The Board decided this question in respondent's favor. Petitioner seeks reversal.

The record does not contain the evidence or any part of it. Hence, the sole question here to be decided is whether the Board's decision is supported by its findings of fact. Its findings are as follows:

"Petitioner, H. T. Robinson, is a resident of Los Angeles, California. In 1921 he became the sole owner of a public utility business operated as a sole proprietorship under the assumed name of Ocean Park Heights Land & Water Co. Its business was the furnishing of water to a certain territory located near the City of Venice, California. Its business was subject to the rules and regulations of the Railroad Commission of the State of California.

"During the period January 1, 1922, to May 1, 1927, several real estate subdividers who had opened residential subdivisions in the neighborhood of Venice, California, came to the petitioner with the request that he furnish water to their various subdivisions. In order to do this it was necessary for the petitioner to have the territory covered by his franchise extended and to acquire extra wells in order to produce more water. Petitioner's franchise was extended to cover the territory embraced in these various subdivisions pursuant to an order of the Railroad Commission of California. Written contracts[2] were entered into between the petitioner and the various subdividers under the terms of

[1] In respondent's amended answer, the 1928 deficiency was alleged to be greater than $7,275.21. The Board determined it was $14,804.59.

[2] The contracts are not set out in hæc verba, in the findings or elsewhere.

which the subdividers agreed to pay the cost of installing all the necessary water mains, pipes, canals, and other connections necessary for the furnishing of water and to transfer the title to such property upon completion to the petitioner, and the petitioner agreed to furnish an adequate water supply to subdividers and to keep such property in repair. In some instances the contracts provided that the subdividers themselves should install the necessary connections, pay the cost thereof, and transfer title to the property to the petitioner; in other instances, the contracts provided for the petitioner to install the necessary connections and for reimbursement of the cost by the subdividers and transfer of title to petitioner.

"The total net cost to the various subdividers of the water mains, pipes, and other connections installed by them between January 1, 1922, and May 1, 1927, was $170,439.93. Title to all of these water mains, pipes, and connections was duly transferred to the petitioner by the several subdividers. The fair market value of the property so transferred to the petitioner was at least $170,439.93.

"The contracts entered into between the [petitioner] and the various subdividers and the transfer by the latter to the petitioner of title to these properties were approved by the Railroad Commission of California and the cost of such improvements was reported to the Railroad Commission of California in the amount of $170,439.93.

"The expense of maintaining these improvements was borne by the [petitioner] after title to them was transferred to him. The persons using water on the premises on which these various improvements were located received no concessions from the petitioner by way of reduced rates. They paid the same rates as other consumers in that area paid.

"On May 1, 1927, petitioner organized the Ocean Park Heights Water Co., Inc., under the laws of California. He transferred to this corporation the entire assets of the Ocean Park Heights Land & Water Co., receiving in exchange therefor bonds of the corporation of the face value of $100,000 and 1,250 shares of the common capital stock. After this transfer the petitioner was the owner of all of the outstanding stock and bonds of the corporation. Included in the assets transferred to the corporation were the water mains, pipes, and connections, title to which had been transferred to petitioner by the various subdividers. The issuance by the corporation of all of its stocks and bonds to petitioner in exchange for the assets of the Ocean Park Heights Land & Water Co. was approved by the California Railroad Commission."

In addition to the foregoing findings of fact, designated as such, the Board made other findings which are incorporated in its opinion. These are as follows:

"The property in question was not given petitioner for services rendered or to be rendered to the subdividers. The service which petitioner was obligated to render was supplying water to the consumers in the subdivision, who paid the regular rates for water which obtained in that area. The property received represents the measure of cost of additional water mains and equipment which petitioner would have had to make in order to supply the subdivision with water and is in the nature of reimbursement for construction costs. * * * It became a part of petitioner's water system which was operated as a unit and from which income was derived. * * *

" * * * We think it clear that the transaction here was not a gift in the sense that it was a gratuity. * * * The 'donors' did not intend to make such a gift to petitioner. The relationship of the parties negatives any such intent. Both were interested in the benefits they hoped to reap by the arrangements. There was, as argued by the respondent, valuable consideration flowing to the subdividers from petitioner for the transfer of the property here in question. The parties were dealing at arm's length. The subdividers needed water to enable them to promote the subdivisions and they agreed to pay the cost of installing all the necessary mains, pipes, and connections, and to transfer title to such property to the petitioner. The petitioner agreed to maintain the property and to furnish an adequate water supply to the subdivisions. This promise constituted consideration for the property received. * *

"There was, therefore, a mutual consideration between the parties and in the absence of any evidence to the contrary we assume that there was a quid pro quo, and that the obligation of petitioner was equal to the value of the property received. In other words, consideration given by petitioner was reasonably worth what the subdividers paid for it. The parties them-

selves so considered it, or they would not have entered into the arrangements. That consideration was petitioner's enforceable promise to perform. The subdividers undoubtedly hoped to recover the cost to them of the donations through the increased value of the property supplied with water.

"The fair market value of the property transferred to petitioner in aid of construction was, when transferred to him, equal to its cost of $170,439.93. This was the value of the consideration given by the subdividers and we think must be regarded as representing the value of the consideration given by petitioner or the cost basis of the property transferred in the hands of petitioner. The cost to petitioner of the water plant or assets transferred, exclusive of the donations in aid of construction was $35,751.93. This gives a total cost basis to petitioner of the assets transferred to the corporation for its stock and bonds of $206,191.86.

\* \* \* \* \* \*

"The consideration given by petitioner [to the subdividers] was his obligation under the contract to furnish an adequate supply of water to the subdivisions, which was executory and continuing. \* \* \* The expenditure made for any additional wells and for extending the water mains to the subdivisions has been capitalized and is included in the $35,751.93, allocated to the value of the assets transferred to the corporation, exclusive of the donations in aid of construction. The corporation took over the water plant as a going concern and the assets were transferred to it. It, therefore, assumed the executory obligation of petitioner under the contracts with the subdividers, and relieved petitioner of any further performance thereunder. Petitioner, therefore, received in exchange for the assets of the water system not only the stock and bonds of the corporation, but was relieved at that time of performance under the contract with the subdividers. This assumption of performance constituted a full recovery of the consideration given by him for the donations in aid of construction. \* \* \* This reduced petitioner's cost basis to $35,751.93. \* \* \* "

Thus, in effect, the Board found that, in exchange for property which had cost him $206,191.86, petitioner received the bonds and stock, plus a further consideration— the assumption by the corporation of petitioner's obligation to the subdividers—the value of which was $170,439.93. The Board concluded, therefore, that, for the purpose of determining petitioner's gain or loss, the proper cost basis of the bonds and stock was $35,751.93.

 We are now asked to hold that, for the property which petitioner transferred to the corporation, he received no consideration except the bonds and stock, and that, therefore, the proper cost basis of the bonds and stock was $206,191.86. To so hold would be to disregard the Board's findings. This we may not do. Not having the evidence before us, we must and do presume that it supported the findings. The findings amply support the decision.

Decision affirmed.